# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOSEPH TORRES,

      Applicant,

v.                                   No.  CIV-08-1202 WJ/LAM

GEORGE TAPIA, et al.,

      Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on Applicant Joseph Torres' ***Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** *(Doc. 1)* (hereinafter "***Application***"), filed on December 29, 2008.  In response to the ***Application***, Respondents filed their ***Answer (Doc. 13)*** on March 13, 2009.  In response to the Court's ***Order for Respondents to Submit Additional State Court Records (Doc. 15)***, Respondents filed state court records in connection with Mr. Torres' state case on May 4, 2009.  *See* ***Respondents' Notice re: Filing of State District Court Tapes, CD, Transcript and Logs*** *(Doc. 18)*.

Also before the Court are Mr. Torres' ***Motion for Respond[e]nts to Submit Additional State Court Records*** (*Doc. 17*), filed April 23, 2009, ***Petitioner's Motion to Ask the Court for Other***

---

[1]**Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within ten (10) days after being served with a copy of the objections.**

*Recordings and Viod [sic] Transcript[]s* (*Doc. 19*), filed May 18, 2009, and *Motion for Order of Court Transcripts* (*Doc. 20*), filed August 27, 2009.

United States District Judge William P. Johnson referred the claims raised in the *Application* to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. *See Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals and Prisoner Cases (Doc. 6).*

Having considered the parties' submissions, relevant law, the record in this case, and the applicable portions of the record in Mr. Torres' state criminal cases CR-2004-536 and CR-2007-431, the undersigned recommends, for the reasons set forth below:

(1) that the claims raised in Mr. Torres' *Application* be **DENIED** because they are without merit and that this case be **DISMISSED with prejudice;** and

(2) that Mr. Torres' *Motion for Respond[e]nts to Submit Additional State Court Records* (*Doc. 17*), *Petitioner's Motion to Ask the Court for Other Recordings and Viod [sic] Transcript[]s* (*Doc. 19*), and *Motion for Order of Court Transcripts* (*Doc. 20*) be **DENIED**.

Because the issues in this case can be resolved on the record before the Court, the Court **FINDS** that an evidentiary hearing is unnecessary. *See Anderson v. Attorney General of Kansas,* 425 F.3d 853, 858-59 (10th Cir. 2005) (evidentiary hearing unnecessary if § 2254 habeas claim can be resolved on the record).

Mr. Torres is incarcerated and proceeding *pro se*. *See Order (Doc. 4)* (granting Mr. Torres' *Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (Doc. 2)*). Because he is a *pro se* litigant, the Court construes his *Application* liberally and holds it to a less stringent standard than pleadings drafted by an attorney. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

-2-

### I.  Factual and Procedural Background

On December 27, 2004, Mr. Torres, pursuant to a felony repeat offender and DWI repeat offender guilty plea, was convicted of possession of a controlled substance, aggravated DWI, driving while his license was suspended or revoked, and no proof of insurance, in state criminal case CR-2004-536.  *See Answer*, Exhibit X *(Doc. 13-4)* at 46-47.[2]  On June 14, 2005, Mr. Torres was sentenced to a total term of four years and 180 days followed by one year on parole, and, upon completion of imprisonment and release from custody, Mr. Torres would be placed on supervised probation for one year and 363 days (to run concurrently with his parole).  *Id.*, Exhibit M *(Doc. 13-3)* at 40-43.  From the state criminal docket, it appears that Mr. Torres was released from prison and ordered to begin serving his probation on September 22, 2006 (and to be completed on September 20, 2008).  *Id.*, Exhibit X *(Doc. 13-4)* at 39.

On March 15, 2007, and while on probation in CR-2004-536, Mr. Torres was charged by grand jury indictment with aggravated battery (great bodily harm) (N.M. Stat. Ann. § 30-3-5(C) (1978)) in CR-2007-341.  *Id.*, Exhibit W *(Doc. 13-4)* at 15 and 25.  On March 28, 2007, the state filed a motion to revoke Mr. Torres' probation in CR-2004-536 because of Mr. Torres' arrest in CR-2007-341.  *Id.*, Exhibit Q *(Doc. 13-4)* at 1.  On the same day, the state filed a supplemental criminal information (habitual offender enhancement) in CR-2004-536, stating that Mr. Torres' sentence in CR-2004-536 should be enhanced, presumably by eight years, pursuant to N.M. Stat. Ann. § 31-18-17 (1978), based on his three felony convictions prior to his commission of the felonies in CR-2004-536.  *Id.*, Exhibit R *(Doc. 13-4)* at 4-5

---

[2]The Court takes judicial notice of the copies of the state court docket for Mr. Torres' state criminal cases which are attached to Respondents' *Answer* as Exhibits X and W.  *See Binford v. United States*, 436 F.3d 1252,1256 n.7 (10th Cir. 2006) (citations omitted) (stating that a court may take judicial notice of facts that are a matter of public record); *Stack v. McCotter*, No. 02-4157, 79 Fed. App'x. 383, 391-92, 2003 WL 22422416 (10th Cir. 2003) (unpublished) (federal court may take judicial notice of docket sheet entries in related state court proceeding).

On May 1, 2007, Mr. Gerald Montrose was appointed to represent Mr. Torres in CR-2004-536 in connection with the petition to revoke his probation.  *Id.*, Exhibit X *(Doc. 13-4)* at 36.  On May 30, 2007, Mr. Albert Granger entered his appearance on behalf of Mr. Torres in CR-2007-341.  *Id.*, Exhibit W *(Doc. 13-4)* at 23.  A hearing was held on June 4, 2007, on a motion to determine counsel in CR-2007-341 (it is unclear from the documents submitted to the Court what the outcome of this hearing was).  *Id.*  On June 13, 2007, Mr. Granger entered his appearance in CR-2004-536.  *Id.*, Exhibit X *(Doc. 13-4)* at 36.  On July 20, 2007, Mr. Montrose entered his appearance in both CR-2004-536 and CR-2007-341.  *Id.*, Exhibit W *(Doc. 13-4)* at 23, and Exhibit X *(Doc. 13-4)* at 36.

On August 17, 2007, Mr. Torres entered into a Repeat Offender Plea and Disposition Agreement in CR-2007-341, whereby he agreed to plead guilty to the charge of aggravated battery (great bodily harm) and agreed to admit that he was convicted of four other crimes.  *Id.*, Exhibit B *(Doc. 13-2)* at 6.  It appears that Mr. Torres was represented by Mr. Granger, as evidenced by Mr. Granger's signature on this plea agreement.  *Id.* at 10.  On the same day, the state trial judge approved this plea agreement in CR-2007-341.  *Id.* at 12.

On August 21, 2007, Mr. Torres filed a *pro se* motion to withdraw his plea in CR-2007-341 stating that he was pressured into signing the plea agreement because Mr. Granger was not prepared for trial and did not contact a key witness who would have testified that Mr. Torres acted in self-defense, and because Mr. Granger would not ask for a continuance.  *Id.*, Exhibit C *(Doc. 13-2)* at 14-15.  On September 10, 2007, Mr. Torres filed an amended motion to withdraw his plea

agreement setting forth generally the same arguments as in his August 21, 2007 motion.  *Id.*,

Exhibit D *(Doc. 13-2)* at 16-17.[3]

On November 8, 2007, the state filed its answer to Mr. Torres' motion to withdraw his plea,

stating the following: that Mr. Torres' claim of self-defense was contradicted by his statement to the

police officer that his only injury was from falling on the ground; that one of the witnesses whom

Mr. Torres said would testify that Mr. Torres acted in self-defense fled the scene before police

arrived and was not present during the battery; and that Mr. Torres' claim that he was pressured into

entering into the plea is contradicted by his statements to the Court that he understood his rights and

wanted to enter into the plea agreement.   *Id.*, Exhibit G *(Doc. 13-2)* at 22-23.   On

December 20, 2007, the state district court held a sentencing hearing wherein it addressed

Mr. Torres' motion to withdraw his plea.  ***See Respondents' Notice re: Filing of State District***

***Court Tapes, CD, Transcript and Logs (Doc. 18)***, CD containing December 20, 2007 sentencing

hearing.  During the sentencing hearing, the state district judge asked if Mr. Torres wanted to pursue

his motion to withdraw his plea, and Mr. Torres stated that he wanted to withdraw the motion.  *Id.*

at 2:13 p.m.

On January 9, 2008, the state district court entered a judgment and order partially suspending

the sentence in CR-2007-341, whereby Mr. Torres was sentenced to a term of three years for the

crime of aggravated battery (great bodily harm), plus an enhancement of four years pursuant to the

habitual offender statute, followed by two years of parole, with a suspension of three years of his

---

[3]On October 11, 2007, Mr. Granger filed a motion to withdraw as counsel in CR-2007-341, stating that
Mr. Torres had submitted a complaint with the State Bar of New Mexico against Mr. Granger, and therefore "a conflict
has arisen and any further involvement would create a conflict of interest."  *Id.*, Exhibit E *(Doc. 13-2)* at 19.  On
October 12, 2007, Mr. Granger filed a motion to withdraw as counsel in CR-2004-536.  *Id.*, Exhibit X *(Doc. 13-4)* at 34.
On October 15, 2007, the state district court granted Mr. Granger's motion to withdraw as counsel in CR-2007-341.  *Id.*,
Exhibit F *(Doc. 13-2)* at 20.

seven-year prison sentence. *Answer*, Exhibit A *(Doc. 13-2)* at 2.  Upon completion of imprisonment and release from custody, Mr. Torres will be placed on supervised probation for three years (to run concurrently with his parole). *Id.*

On June 30, 2008, the state district court held a hearing in CR-2004-536 on the state's motion to revoke Mr. Torres' probation in that case based on his arrest in CR-2007-341.  *Id.*, Exhibit X *(Doc. 13-4)* at 30.   On September 8, 2008, Mr. Torres' then-appointed counsel (Gregory Garvey) filed a motion to dismiss the supplemental criminal information filed in CR-2004-536.  *Id.*, Exhibit S *(Doc. 13-4)* at 7.  On September 10, 2008, Mr. Torres filed a *pro se* motion to dismiss CR-2004-536, based on ineffective assistance of counsel and "violation of speedy trial on habitual offender summon[]s." *Id.*, Exhibit T *(Doc. 13-4)* at 9.  On September 11, 2008, the district court held a hearing on the probation revocation and motion to dismiss.  *See* recording of September 11, 2008 sentencing hearing produced as part of ***Respondents' Notice re: Filing of State District Court Tapes, CD, Transcript and Logs*** *(Doc. 18)*.  On September 12, 2008, the state district judge entered an order dismissing the supplemental criminal information in CR-2004-536 with prejudice.  *Answer*, Exhibit U *(Doc. 13-4)* at 13.  On September 23, 2008, the state district judge entered an order of early unsatisfactory discharge from probation in CR-2004-536, stating that Mr. Torres is discharged from the term of probation in CR-2004-536 based on the state's oral motion for unsatisfactory discharge from probation.  *Id.*, Exhibit V *(Doc. 13-4)* at 14.[4]

---

[4]The Court notes that Mr. Torres' probation revocation hearing was continued numerous times (*see Answer*, Exhibit X *(Doc. 13-4)* at 27-33 (December 10, 2007 - continued; January 18, 2008 - "Pass;" February 14, 2008 - re-set; March 20, 2008 - "Pass;" April 30, 2008 - re-set; June 30, 2008 - re-set; July 11, 2008 - re-set; August 14, 2008 - re-set). By the time the state district court heard both the petition to revoke probation and the supplemental criminal information on the habitual offender enhancement on September 11, 2008 (*id.* at 27-28), and the state district court entered an order dismissing the supplemental criminal information (*id.*, Exhibit U *(Doc. 13-4)* at 13), Mr. Torres had only a few days left on his probation under CR-2004-536, which expired on September 20, 2008 (*id.*, Exhibit X *(Doc. 13-4)* at 39).

On August 12, 2008, Mr. Montrose filed a motion to withdraw as counsel in CR-2004-536. *Id.*, Exhibit X *(Doc. 13-4)* at 29.  On August 15, 2008, the state district court granted Mr. Montrose's motion to withdraw as counsel and ordered the public defender's office to appoint an attorney to represent Mr. Torres.  *Id.* at 28, and ***Application*** *(Doc. 1-2)* at 28.

On August 19, 2008, Mr. Torres filed a *pro se* petition for writ of habeas corpus for CR-2007-341 in the state district court.  *Id.*, Exhibit H *(Doc. 13-2)* at 26-46.[5]  His petition presented the following issues for consideration: (1) that Mr. Granger provided ineffective assistance of counsel in CR-2007-341 for failing to submit pre-trial motions, failing to interview and investigate witnesses to show Mr. Torres acted in self-defense, failing to prepare for Mr. Torres' trial, and pressuring Mr. Torres into signing an involuntary plea agreement (*id.* at 27); (2) that Mr. Torres was given ineffective assistance of counsel because Mr. Montrose was re-appointed as Mr. Torres' counsel (*id.* at 28); (3) that Mr. Montrose provided ineffective assistance of counsel in CR-2007-341 for failing to investigate the case, question Mr. Granger (presumably about why he pressured Mr. Torres into pleading guilty), or attempt to withdraw the plea agreement (*id.* at 28-29) and for inducing Mr. Torres to drop his motion to withdraw the plea agreement by stating that Mr. Torres would only serve 50% of a four-year enhancement, and instead Mr. Torres states that he is now serving 85% of a four-year sentence (*id.* at 29).  On August 29, 2008, the New Mexico District Court summarily dismissed Mr. Torres' petition for writ of habeas corpus.  *Id.*, Exhibit I *(Doc. 13-2)* at 48.

On September 25, 2008, Mr. Torres filed a petition for writ of certiorari for both CR-2004-536 and CR-2007-341 with the New Mexico Supreme Court seeking review of the denial

---

[5]Neither Mr. Torres nor Respondents submitted an endorsed copy of Mr. Torres' *filed* petition for writ of habeas corpus, so the Court looked at the state district court's order dismissing the petition for writ of habeas corpus (***Answer***, Exhibit I *(Doc. 13-2)* at 47) and the state district court's docket (*id.*, Exhibit W *(Doc. 13-4)* at 16) to determine the filing date for the petition for writ of habeas corpus.

of his state habeas petition. *Id.*, Exhibit J *(Doc. 13-3)* at 1-32.  His petition presented the following issues for review: (1) that the state district court erred in failing to review the transcripts of his state case CR-2004-536, wherein Mr. Torres states that Mr. Montrose promised Mr. Torres that if he withdrew his motion to withdraw his plea agreement that Mr. Torres would only serve two years of the four-year sentence enhancement (*id.* at 2); (2) that Mr. Montrose "falsely advi[sed Mr. Torres] that he would receive 50% good time [credits] on a 4 year sentence of 4 year habitual of[f]ender" (*id.*); (3) that the state district court erred in re-appointing Mr. Montrose as Mr. Torres' counsel (*id.* at 3); (4) that the state district court erred in failing to provide Mr. Torres with 50% good time credit for his sentence as was promised by Mr. Montrose (*id.* at 3); (5) that Mr. Torres did not receive good time credit "d[ue] to lack [of] and po[o]r communication between [the] District Attorney and Gerard Montrose [and] tak[]ing the Defendant back and forth from the Department of Corrections to Doña Ana County, without any resolution or resolvement [sic] of Case No. CR-2004-0536" (*id.*); (6) that Mr. Granger provided ineffective assistance of counsel by failing to subpoena witnesses who would have shown Mr. Torres acted in self-defense (*id.* at 4); and (7) that Mr. Torres was pressured into signing an involuntary plea because of the lack of representation by Mr. Granger (*id.* at 5).  On November 25, 2008, New Mexico's Attorney General filed a response *(id.*, Exhibit K *(Doc. 13-3))* to Mr. Torres' petition for writ of certiorari, wherein the state contended that: (1) Mr. Torres received effective assistance of counsel (*id.* at 36), (2) Mr. Torres entered into a valid plea agreement (*id.*); (3) Mr. Torres received the benefit of only having to serve four years of the habitual offender enhancement instead of the eight years he was subject to (*id.* at 37); (4) the state district judge found Mr. Torres' plea was voluntary (*id.*); and (5) Mr. Torres received the presentence and postsentence credit to which he was entitled (*id.*).

On December 5, 2008, the New Mexico Supreme Court entered an order summarily denying Mr. Torres' petition for writ of certiorari. *Id.*, Exhibit L *(Doc. 13-3)* at 39. Mr. Torres did not seek review of the New Mexico Supreme Court decision by writ of certiorari to the United States Supreme Court.

On December 29, 2008, Mr. Torres filed his **Application** for federal habeas relief in this Court, initiating this proceeding. *See* **Application** *(Doc. 1)*. His **Application** was timely filed pursuant to 28 U.S.C. § 2244(d)(1)(A) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from . . . the date on which the judgment became final by the conclusion of direct review.").

## II.  Mr. Torres' Section 2254 Claims

In his **Application**, Mr. Torres makes several claims relating to these two state district court cases (CR-2007-341 and CR-2004-536). *See* **Application** *(Doc. 1)* at 2, 7, 9, 11-12. The Court notes that Mr. Torres' claims and the "Supporting Facts" under each claim are not easy to understand and appear to overlap with each other; nevertheless, the Court has carefully read these claims and has construed them liberally. First, Mr. Torres appears to make a claim that he was denied effective assistance of counsel by Mr. Granger in CR-2007-341[6] based on the following allegations: (a) that Mr. Granger failed to investigate, interview or subpoena witnesses who would have shown that Mr. Torres acted in self-defense; (b) that Mr. Granger pressured Mr. Torres into signing the plea agreement; and (c) that Mr. Granger failed to file pretrial motions or to prepare for trial. *Id.* at 7.

---

[6]Although Mr. Torres fails to identify which of his state cases he is referring to, the Court presumes that it is CR-2007-341 because of his references to his "act[ing] in self-defense after being hit by 2 beer bottles by alleged victim" (an issue consistent with a charge of aggravated battery), and that he "was pressured into signing an involuntary plea." **Application** *(Doc. 1)* at 7. Both of these issues are part of his state habeas petition in CR-2007-341. *See* **Answer**, Exhibit H *(Doc. 13-2)* at 27.

Second, Mr. Torres claims that his constitutional rights were violated because Mr. Montrose was re-appointed as Mr. Torres' counsel after the state district judge in CR-2004-536 ordered the public defender's office to appoint an attorney for Mr. Torres other than Mr. Montrose or Mr. Granger because it would be a "conflict of interest" to reappoint these attorneys.[7] *Id.* at 9. Third, Mr. Torres alleges ineffective assistance of counsel by Mr. Montrose based on the following allegations: (a) that Mr. Montrose refused to represent Mr. Torres in his motion to withdraw the plea agreement on the grounds that Mr. Torres was pressured into signing the plea agreement by Mr. Granger (*id.* at 11); (b) that Mr. Montrose refused to file a motion for a polygraph test to show that Mr. Torres was telling the truth that he acted in self-defense (*id.*); (c) that Mr. Montrose misrepresented to Mr. Torres that if Mr. Torres dropped his motion to withdraw his plea agreement,  he would only have to serve 50% of a four-year sentence and, instead, Mr. Torres is serving 85% of a four-year sentence[8] (*id.* at 11-12); (d) that Mr. Montrose left Mr. Torres to defend himself on his probation revocation petition in CR-2004-536 and forced Mr. Torres to file a motion to dismiss his supplemental habitual offender information filed in that case which sought an eight-year enhancement (*id.* at 12); and (e) that due to Mr. Montrose's delays in getting a hearing set on the probation revocation petition, Mr. Torres lost good time credit from December 22, 2007 to September 11, 2008 while awaiting resolution of the probation revocation because his case "was

---

[7]The Court notes that Respondents state in their ***Answer (Doc. 13)*** at 4 that Mr. Torres' second claim is based on the re-appointment of Mr. Granger, not Mr. Montrose.  However, Mr. Torres' claim seems to clearly be regarding the re-appointment of Mr. Montrose.  *See **Application** (Doc. 1)* at 9, and Mr. Torres' state habeas petition, ***Answer***, Exhibit H *(Doc. 13-2)* at 28, and petition for writ of certiorari, ***Answer***, Exhibit J *(Doc. 13-3)* at 3.  The Court, therefore, will consider this claim based on the re-appointment of Mr. Montrose.  The Court finds that it is irrelevant whether the alleged error was in re-appointing Mr. Montrose or Mr. Granger because Mr. Torres' argument and the Court's analysis of the claim are the same for both attorneys.

[8]As further explained in Section IV.B.3 below, it appears that Mr. Torres is claiming that he should be earning a greater amount of "Earned Meritorious Deductions" (commonly referred to as "good time" credits or awards, *see New Mexico v. Rudolfo*, 187 P.3d 170, 177-78 (N.M. 2008)), pursuant to N.M. Stat. Ann. § 33-2-34, known as the Earned Meritorious Deductions Act or EMDA.  However, since he was found guilty of a "serious violent offense," he is limited by state statute as to how much good time credit he can receive.  *See, e.g., Rudolfo* 187 P.3rd at 178.

either continued by [his] attorny [sic] or the state because [they were] not ready to proceed" (*id.*). As relief, Mr. Torres asks the Court for "such relief to which he may be entitled." *Id.* at 17.

In their *Answer* to Mr. Torres' *Application*, Respondents: (1) state that Mr. Torres' conviction in state case CR-2004-536 "has been completely discharged" (*see Answer (Doc. 13)* at 2-3 (citing Exhibit V *(Doc. 13-4)* at 14)); and (2) contend, pursuant to 28 U.S.C. § 2254(d)(1)-(2), that Mr. Torres has neither alleged nor established that proceedings in his state criminal case

> either: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, federal law as determined by the United States Supreme Court; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

*Id.* at 8 (citation omitted).  Additionally, Respondents assert that Mr. Torres has not offered clear and convincing evidence to overcome the presumption of correctness applied to state court factual determinations pursuant to 28 U.S.C. § 2254(e)(1).  *Id.* at 8.  Respondents ask the Court to deny Mr. Torres' *Application* and dismiss the *Application* with prejudice.  *Id.*

In response to the Court's *Order for Respondents to Submit Additional State Court Records (Doc. 15)*, Respondents filed cassette tapes and a CD containing recordings of the following hearings: In CR-2004-536, the April 12, 2007, December 7, 2007, January 17, 2008, and June 30, 2008 hearings on the state's motion to revoke Mr. Torres' probation and the September 11, 2008 sentencing hearing; and in CR-2007-341, the June 4, 2007 hearing on a motion to determine counsel, the November 9, 2007 hearing on Mr. Torres' motion to withdraw his plea, and the "December (12) 20, 2007" sentencing hearing.  *See Respondents' Notice re: Filing of State District Court Tapes, CD, Transcript and Logs (Doc. 18)*.  In addition, the state filed a transcript of the August 17, 2007 change of plea hearing in CR-2007-341.  *Id.*  The Court has considered to

all of the hearings submitted by the state as part of the record in this case and has reviewed the

August 17, 2007 transcript.

### III.  *Exhaustion of State Court Remedies*

A state prisoner must generally exhaust available state court remedies before a federal court

can consider the prisoner's habeas petition under 28 U.S.C. § 2254.  *See* 28 U.S.C. § 2254(b)(1)(A);

*Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).  The exhaustion requirement is considered

satisfied "if the federal issue has been properly presented to the highest state court, either by direct

review of the conviction or in a postconviction attack."  *Dever v. Kan. State Penitentiary*,

36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted).  In their ***Answer***, Respondents state that

Mr. Torres has exhausted state court remedies with regard to the claims raised in his ***Application***

because "[t]he various claims were raised in the state habeas corpus proceedings and denied by the

New Mexico Supreme Court."  ***Answer*** (*Doc. 13*) at 5.

It appears to the Court, however, that Mr. Torres failed to raise in his petition for writ of

certiorari to the New Mexico Supreme Court the claims that his counsel was ineffective for failing

to file pre-trial motions that would have shown that he acted in self-defense, and for failing to

attempt to withdraw the plea agreement, (*see* ***Answer***, Exhibit J *(Doc. 13-3)*), although he mentions

his self-defense claim and his motion to withdraw the plea agreement in his description of the

proceedings (*id.* at 4-5).  These claims, however, were raised in Mr. Torres' state habeas petition,

which was attached in its entirety as an exhibit to the petition for writ of certiorari (*see* ***Answer***,

Exhibit J *(Doc. 13-3)* at 13-15), and which were denied in his state habeas petition (*id.* at 10).

Therefore, arguably, the New Mexico Supreme Court had the opportunity to review them and they

are, therefore, exhausted.  *See Demarest v. Price*, 130 F.3d 922, 932 (10th Cir. 1997) (claims have

been "fairly present[ed]" to the state courts under the exhaustion doctrine where "the substance of

the claim" was raised before the state court, and "evidence that places the claims in a significantly different legal posture must first be presented to the state courts") (citations and quotations omitted).

It also appears to the Court that Mr. Torres failed to raise in either his state habeas petition or his petition for writ of certiorari the claim that he had to defend himself against the probation revocation in CR-2004-536. *See **Application** (Doc. 1)* at 12.  Even if this claim has not been exhausted, the Court chooses to address this habeas petition on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also Hardiman v. Reynolds*, 971 F.2d 500, 502 (10th Cir. 1992) ("Generally, where the parties have not raised a defense [of exhaustion or procedural default], the court should not address the defense sua sponte."); *Gonzales v. McKune*, 279 F.3d 922, 926 (10th Cir. 2002) (quoting *Hardiman*, 971 F.2d at 502).

### IV.  Claims for Habeas Corpus Relief

#### A.  Standards of Review

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and  Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter, "AEDPA"), govern this case.  The Court cannot grant Mr. Torres habeas relief pursuant to 28 U.S.C. § 2254(d) unless the decision in his state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).  The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.  *See, e.g., Wright v. Van Patten*, 552 U.S. 120 (2008); *Fry v. Pliler*,

551 U.S. 112 (2007); *Bell v. Cone*, 543 U.S. 447 (2005) (per curiam); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); *Early v. Packer*, 537 U.S. 3 (2002) (per curiam); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. at 413. A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions. [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). *See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-1293 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law). Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply. So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting

the "decision."  *See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision).  Moreover, if a state court's decision does not conflict with the  reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. at 17.  If a state court decides a claim on the merits in summary fashion, the AEDPA standards still apply, but the focus is on the state court's results rather than any reasoning.  *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).

Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent  if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 413.  However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted).  "Rather, that application must be objectively unreasonable." *Id.* at 76.  A state court cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law," under 28 U.S.C. § 2254(d)(1), if no Supreme Court decision provides a clear answer to a question presented in the state court. *See Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 747 (2008) (citing *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 654 (2006)).

Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d). If the state court did not adjudicate the claim on the merits, and the claim is not otherwise procedurally barred, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)). Under the pre-AEDPA standard of review, a state court's findings of fact are afforded a presumption of correctness, and both legal conclusions and mixed questions of law and fact are reviewed *de novo*. *See Castro v. Ward*, 138 F.3d 810, 815-16 (10th Cir. 1998). "[T]he presumption of correctness will continue to apply to any findings of fact underlying mixed questions." *Id.* at 816 (quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989)). *See also* 2 Randy Hertz and James S. Liebman, *Federal Habeas Corpus Practice and Procedure*, § 32.1 at 1565 (5th ed. 2005) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

## B. Analysis

Subject to the foregoing standards, the Court considers Mr. Torres' claims in this proceeding.

### 1. Mr. Torres' Ineffective Assistance of Counsel Claims Against Mr. Granger

Mr. Torres contends that he was denied constitutionally effective assistance of counsel by Mr. Granger in CR-2007-341 because Mr. Granger failed to investigate or interview witnesses who would have shown that Mr. Torres acted in self-defense, pressured Mr. Torres into signing the plea

agreement, and failed to file pretrial motions or to prepare for trial.  *See **Application** (Doc. 1)* at 7.

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668 (1984).  To prevail on an ineffective assistance claim under the *Strickland* standard, Mr. Torres must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance.  *Id.* at 687-88. Both showings must be made to satisfy the *Strickland* standard.  *Id.* at 687.  To demonstrate unreasonable performance, Mr. Torres must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Mr. Torres must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors.  *Id.* at 694.  The Court does not have to address both prongs of the *Strickland* standard if Mr. Torres makes an insufficient showing on one of the prongs.  *Id.* at 697.

Mr. Torres' claim that Mr. Granger rendered ineffective assistance of counsel by failing to investigate or interview witnesses fails because Mr. Torres does not identify how these witnesses or evidence would have altered the outcome of his case.  Mr. Torres states in his petition for writ of certiorari to the New Mexico Supreme Court that "Jhonathan [sic] Garcia and Cecila [sic] Sales" would have testified that Mr. Torres acted in self-defense (*see **Application** (Doc. 1-2)* at 5), and that Mr. Torres submitted a letter from Mr. Garcia dated November 12, 2007, wherein Mr. Garcia states that "Rudy and Andy approached Joseph Torres and attacked Joseph with bottles[, then] Joseph just protected himself and got in a fight with Andy and Rudy," and that his uncle (Mr. Torres) "was only protecting himself" (*id.* at 21).  The Court does not find that Mr. Torres has provided enough support

-17-

to find that interviewing these witnesses and obtaining Mr. Garcia's letter would have resulted in a different outcome in his case.  The Court finds that Mr. Torres' statement is conclusory and fails to provide sufficient facts to support Mr. Torres' claim that his counsel was ineffective.  Mr. Torres also fails to address the state's allegation that Mr. Garcia "fled the scene prior to police arrival, and was not deemed to be a credible fact witness since he was not present at the victim's beating" (*see Answer*, Exhibit G *(Doc. 13-2)* at 22).  Mr. Torres does not allege prejudice based on Mr. Granger's failure to investigate or interview these witnesses nor does he allege that if Mr. Granger had taken these actions that he would not have pled guilty.  Mr. Torres, therefore, does not satisfy the prejudice prong of the *Strickland* analysis because he fails to show a reasonable probability that the result of the proceeding would have been different but for Mr. Granger's alleged unprofessional errors.  The Court finds that this claim should be denied.

Mr. Torres' claim that his constitutional rights were violated because he entered into a plea agreement in CR-2007-341 as the result of his counsel's ineffectiveness and because of pressure by Mr. Granger also fails.  Allegations of pressure to enter into a plea agreement are not sufficient to vitiate a voluntary plea.  *See United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996) (allegations that counsel hounded, browbeat, and yelled at Defendant, held to be "palpable" pressure but did not make the plea involuntary); *see also Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995) (citing cases for propositions that attorney's persuasion, "strong urging," and "threat to withdraw from case if client did not accept plea bargain," were insufficient to render plea involuntary).  Moreover, the Court notes that the state district judge found "[t]hat the plea is voluntary and not the result of force, threats or promises other than a plea agreement."  *Answer*, Exhibit B *(Doc. 13-2)* at 11.  The Court, therefore, finds that this claim should be denied.

Finally, Mr. Torres' claim that Mr. Granger rendered ineffective assistance of counsel by failing to file pre-trial motions is conclusory and unsupported.  Mr. Torres fails to identify any motions he thinks Mr. Granger should have filed or how those motions would have altered the outcome of his trial.  *See Application (Doc. 1)* at 7.  Since Mr. Torres fails to allege sufficient facts on which to base this claim, the Court finds that it should be denied.  *See Hall*, 935 F.2d at 1110 (conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim).

### 2.  Mr. Torres' Claim That the State Court Erred in Re-appointing Mr. Montrose

Next, Mr. Torres claims that his constitutional rights were violated because Mr. Montrose was re-appointed as Mr. Torres' counsel after the state district judge in CR-2004-536 ordered the public defender's office to appoint an attorney for Mr. Torres other than Mr. Montrose or Mr. Granger because it would be a "conflict of interest" to re-appoint these attorneys.  *Application (Doc. 1)* at 9.  Mr. Torres contends that the state district court should have reviewed the state district court's transcripts regarding the re-appointment of Mr. Montrose.  *Id.*

The Supreme Court has held that an attorney's conflict of interest "demonstrat[es] a denial of the right to have the effective assistance of counsel."  *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980) (quotation omitted); *see also United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir.1990). If an applicant shows that the conflict of interest "actually affected the adequacy of his representation," then the applicant "need not demonstrate prejudice in order to obtain relief." *Cuyler*, 446 U.S. at 349-50.  An "actual conflict of interest" cannot be demonstrated merely by "the possibility of conflict;" instead, the Supreme Court has held that the claimant must show "that his counsel actively represented conflicting interests."  *Id.* at 350.

The Court finds that Mr. Torres' claim that the re-appointment of Mr. Montrose was a "conflict of interest" such that Mr. Torres' constitutional rights were denied fails. First, Mr. Torres does not provide, and the Court is unable to find, any support in the record that Mr. Montrose was ever "re-appointed" in either of Mr. Torres' state cases. Mr. Montrose was Mr. Torres' counsel in CR-2004-536 from July 20, 2007 (**Answer**, Exhibit X *(Doc. 13-4)* at 36) until August 15, 2008, when the state district court granted Mr. Montrose's August 12, 2008 motion to withdraw as Mr. Torres' counsel (**Answer**, Exhibit X *(Doc. 13-4)* at 28-29, and **Application** *(Doc. 1-2)* at 28). In CR-2007-341, Mr. Montrose entered his appearance as Mr. Torres' counsel on July 20, 2007 (**Answer**, Exhibit W *(Doc. 13-4)* at 23), and there is nothing to indicate he withdrew as counsel in that case, and in fact he signed off on the judgment that was entered on January 16, 2008. There was no re-appointment of Mr. Montrose in either of these cases.

Mr. Torres may be alleging that Mr. Montrose's representation presented a conflict because Mr. Torres had made complaints about Mr. Montrose to the State of New Mexico Public Defender Department on January 22, 2008, and to the State of New Mexico Disciplinary Board around May 14, 2008. *See* **Application** *(Doc. 1-2)* at 22-23. This claim fails because in CR-2007-341, Mr. Montrose did not represent Mr. Torres after judgment was entered in the case on January 16, 2008, and Mr. Torres' complaints about Mr. Montrose were made after that date. In CR-2004-536, even though Mr. Montrose continued as Mr. Torres' counsel, after Mr. Torres complained to the State Disciplinary Board and Public Defender Department, until August 15, 2008, when his motion to withdraw as counsel was granted, filing complaints against an attorney does not create an actual conflict of interest under the *Cuyler* standard. While the Tenth Circuit has not addressed this issue, other circuit courts have held that appealing to disciplinary authorities alone does not create an actual conflict of interest under *Cuyler*. *See United States v. Holman*,

314 F.3d 837, 845 (7th Cir. 2002) ("The fact that [the defendant] initiated a disciplinary inquiry against his attorney is not enough to establish an actual conflict of interest."); *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (holding that the defendant's state bar grievance petition against his attorney did not create a conflict of interest because the record contained no evidence showing that the attorney failed to represent the defendant in an objectively reasonably manner); *United States v. Contractor*, 926 F.2d 128, 134 (2nd Cir. 1991) (holding that the defendant's complaint to the state's bar association against his attorney did not establish a conflict of interest under *Cuyler* because the defendant failed to show how the alleged conflict adversely affected his attorney's performance and requiring that "[t]he defendant must identify an actual conflict of interest [and] [a]llegations of wrong doing alone cannot rise to the level of an actual conflict unless the charges have some foundation") (citation omitted).  Mr. Torres fails to allege or provide any evidence showing that Mr. Montrose's performance was adversely affected by Mr. Torres' complaints about him.  Because Mr. Torres fails to show that the alleged conflict of interest "actually affected the adequacy of his representation," or "that his counsel actively represented conflicting interests," as he is required to do to demonstrate an "actual conflict of interest," the Court finds that this claim is without merit and should be denied.  *Cuyler*, 446 U.S. at 349-50.

### 3. Mr. Torres' Ineffective Assistance of Counsel Claims Against Mr. Montrose

Mr. Torres claims that Mr. Montrose was ineffective for the following reasons: (a) refusing to represent Mr. Torres in his motion to withdraw the plea agreement; (b) refusing to file a motion for a polygraph test to show that Mr. Torres acted in self-defense; (c) misrepresenting that if Mr. Torres dropped his motion to withdraw his plea agreement he would only have to serve 50% of a four-year sentence instead of the 85% he is serving; (d) leaving Mr. Torres to defend himself on his probation revocation petition in CR-2004-536 and forcing Mr. Torres to file a motion to

dismiss his supplemental habitual offender information; and (e) that due to Mr. Montrose's ineffective assistance, Mr. Torres lost good time credit while awaiting resolution of the probation revocation hearing because of repeated delays and continuances. *See Application (Doc. 1)* at 11-12.

The Court finds that Mr. Torres' claim that Mr. Montrose was ineffective for refusing to represent Mr. Torres in his motion to withdraw his plea agreement fails. Mr. Torres states that Mr. Montrose should have represented him in his motion to withdraw his plea agreement because the plea agreement was involuntary. *Id.* at 11. As explained in Section IV.B.1. above, Mr. Torres' claim that his plea agreement was involuntary is without merit, and Mr. Montrose's alleged failure to pursue that issue on a motion to withdraw the plea agreement does not constitute ineffective assistance of counsel. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (holding that counsel's failure to raise meritless issue did not constitute ineffective assistance).

The Court also finds that Mr. Torres' claim that Mr. Montrose was ineffective for failing to file a motion for a polygraph test to show that he was telling the truth that he acted in self-defense fails because Mr. Torres does not identify how that evidence would have altered the outcome of his case. Mr. Torres does not allege prejudice based on Mr. Montrose's failure to file a motion for a polygraph test, nor does he allege that if Mr. Montrose had taken this action that he would not have pled guilty anyway. Mr. Torres, therefore, does not satisfy the prejudice prong of the *Strickland* analysis because he fails to show a reasonable probability that the result of the proceeding would have been different but for Mr. Montrose's alleged unprofessional errors. The Court finds that this claim should be denied.

The Court finds no support for Mr. Torres' claim that Mr. Montrose was ineffective by misrepresenting that Mr. Torres would serve only 50% of his sentence if he signed the plea agreement, instead of the 85% Mr. Torres is serving. *See Application (Doc. 1)* at 11. As support

for this claim, Mr. Torres states that "on or about June 30, 2008, [Mr.] Montrose admitted in open court [that] he mislead [sic] and falsely advi[s]ed [Mr. Torres]," presumably about his sentence. *Id.* at 12.  There is no evidence in the record of any agreement to a sentence of any certain length.  The Court listened to the June 30, 2008, recording of the hearing and heard no admission by Mr. Montrose of falsely advising Mr. Torres about his sentence.  Moreover, the Court notes that there is no promise of a certain sentence length in the plea agreement signed by Mr. Torres.  *See Answer*, Exhibit B *(Doc. 13-2)* at 7 (stating that "[t]here are no agreements as to sentencing").  Furthermore, Mr. Torres stated at the August 17, 2007, hearing to approve the plea agreement that nobody had promised him anything to induce him to enter his plea other than what was indicated in the plea agreement, nor had anyone threatened him or pressured him in any form causing him to plead guilty.  *See* Transcript of August 17, 2007, hearing at page TR-4, submitted in response to *Order for Respondents to Submit Additional State Court Records (Doc. 15)*.  The Court finds that Mr. Torres' claim that he was promised a shorter sentence is without merit.

To the extent that Mr. Torres is claiming that he was promised "earned meritorious deductions" so that he would serve only 50% of his sentence instead of 85%, the Court finds that this claim fails as well.  Under New Mexico's Earned Meritorious Deductions Act, N.M. Stat. Ann. § 33-2-34 (1978) (hereinafter "EMDA"), a person who is "confined in a correctional facility" and otherwise eligible, and who is convicted of a "serious violent offense," may "earn meritorious deductions" at the rate of "up to a maximum of four days per month of time served," while a person convicted of a nonviolent offense may earn "up to a maximum of thirty days per month of time served."   N.M. Stat. Ann. § 33-2-34(A)(1)-(2) (1978).   Mr. Torres was sentenced on January 9, 2008, in CR-2007-341 for the crime of aggravated battery (great bodily  harm) in violation of N.M. Stat. Ann. § 30-3-5(C) (1978) (*see Answer*, Exhibit A *(Doc. 13-2)* at 2), which

is a "serious violent offense" under N.M. Stat. Ann. § 33-2-34(L)(4)(c) (1978), making his good time credits set at a maximum of four days per month. *See New Mexico v. Rudolfo*, 187 P.3d 170, 178 (N.M. 2008) (explaining that "the sentencing court has no discretion whatsoever" regarding the classification of the crimes identified as "serious violent offenses" in Section 33-2-34(L)(4) which are "subject to the four day per month cap on good time eligibility"). Mr. Torres states in his *Application (Doc. 1)* at 12 that he is serving 85% of a four-year sentence, which would be consistent with the four days per month "earned meritorious deductions" to which he is entitled under the EMDA.[9]

Not only does Mr. Torres fail to provide any support for his claim that he was promised that he would serve only 50% instead of 85% of his sentence but, because Mr. Torres was convicted of a "serious violent offense" as defined in N.M. Stat. Ann. § 33-2-34(L)(4) (1978), the state district court did not have any discretion in setting the rate of good time credits that Mr. Torres can receive. *See Rudolfo*, 187 P.3d at 178. Mr. Torres may be confused because, as the state explained in their response to his petition for writ of certiorari (*see Answer*, Exhibit K *(Doc. 13-3)* at 37), as a result of the plea agreement, the state only imposed four years of the habitual offender enhancement, instead of the eight years that could have been imposed (*see* N.M. Stat. Ann. § 31-18-17(C)). If that is the case, Mr. Torres did receive the benefit of receiving only 50% of the habitual offender enhancement as a result of his entering into the plea agreement. The Court finds that Mr. Torres is receiving good time credits at the rate at which he is entitled under the EMDA, and his claim that he should receive good time credits at a higher rate as a result of his counsel's ineffectiveness, without providing any support for that claim, is without merit and should be denied. *See Hall*,

---

[9]"There is no provision in the EMDA or any other New Mexico statute that requires a prisoner to serve 85% of any sentence, although the EMDA's four days per month limit on good time awards relating to serious violent offenses results in a prisoner having to serve between 86.85% and 100% of [the prisoner's] stated sentence." *Rudolfo*, 187 P.3d at 178.

935 F.2d at 1110 (conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim).

Mr. Torres' claim that Mr. Montrose was ineffective by leaving Mr. Torres to defend himself in his probation revocation petition in CR-2004-536 also fails. *See Application (Doc. 1)* at 12. Mr. Torres states that the fact that he had to file a *pro se* motion to dismiss the supplemental criminal information in CR-2004-536, and because that motion was granted, provides proof that Mr. Montrose was ineffective. *Id.* First, the Court notes that, even though Mr. Torres filed a motion to dismiss the supplemental criminal information on September 10, 2008 (*see Answer*, Exhibit T *(Doc. 13-4)* at 9), Mr. Torres' then-counsel, Gregory J. Garvey, had already filed a similar motion to dismiss on September 8, 2008 (*id.*, Exhibit S *(Doc. 13-4)* at 7). Both motions asked the state court to dismiss with prejudice the supplemental criminal information (which sought an eight-year habitual offender enhancement) in CR-2004-536 because of violation of New Mexico's six-month time limit for trial of habitual offender criminal proceedings (New Mexico Rule of Criminal Procedure 5-604(B), (F)). *Id.*, Exhibit T *(Doc. 13-4)* at 9, and Exhibit S *(Doc. 13-4)* at 7-8. On September 12, 2008, the state court granted Mr. Garvey's motion to dismiss and dismissed the supplemental criminal information in CR-2004-536 with prejudice. *Id.*, Exhibit U *(Doc. 13-4)* at 13. Mr. Torres' claim that he was prejudiced by having to file a motion to dismiss on his own fails because: (1) his counsel, Mr. Garvey, had already filed a motion to dismiss, and (2) the outcome of the case was favorable to Mr. Torres. If Mr. Torres is alleging that Mr. Montrose should have filed this motion to dismiss earlier than Mr. Garvey did, and even if Mr. Montrose's failure to file said motion to dismiss fell below an objectively reasonable standard, Mr. Torres fails to show that he was prejudiced by this failure. Mr. Torres was incarcerated under his indictment in CR-2007-341 for the entire time that his supplemental criminal information was pending in CR-2004-536, and he did

not spend any additional time in prison as a result of any delay in filing a motion to dismiss his supplemental criminal information.  Mr. Torres fails to allege that he suffered any prejudice from his attorney's alleged unprofessional errors, and, therefore, the Court finds that this claim should be denied.

Finally, the Court finds no merit in Mr. Torres' claim that, as a result of Mr. Montrose's ineffective assistance, and because of repeated delays and continuances (presumably in state case CR-2004-536), Mr. Torres did not receive good time credits from December 22, 2007 to September 11, 2008.  *See **Application** (Doc. 1)* at 12.  This claim appears to pertain to the petition for revocation of Mr. Torres' probation under CR-2004-536 based on his new felony in CR-2007-341, because these dates refer to the time period between his sentencing in CR-2007-341 and the dismissal of the supplemental criminal information in CR-2004-536.  To the extent Mr. Torres is claiming that he should have received good time credits for his sentence in CR-2004-536, it appears from the docket entries in CR-2004-536 that, as a result of the numerous delays in setting the probation revocation hearing in that case, Mr. Torres was never sentenced in CR-2004-536 as a result of the supplemental criminal information.  *See **Answer***, Exhibit X *(Doc. 13-4)* at 27-33 (showing that the probation revocation hearing was delayed as follows: December 10, 2007 (continued); January 18, 2008 ("Pass"); February 14, 2008 (re-set); March 20, 2008 ("Pass"); April 30, 2008 (re-set); June 30, 2008 (re-set); July 11, 2008 (re-set); August 14, 2008 (re-set)).  Instead of being sentenced on the petition for revocation of probation and for the supplemental criminal information in CR-2004-536, Mr. Torres received an early unsatisfactory discharge from probation in CR-2004-536.  *Id.*, Exhibit V *(Doc. 13-4)* at 14.  Additionally, the supplemental criminal information seeking an eight-year enhancement was dismissed.  ***Answer***, Exhibit U *(Doc. 13-4)* at 13.  As a result, Mr. Torres actually benefitted from

these delays in CR-2004-536 because he was never sentenced for violating his probation or for the habitual offender enhancement under CR-2004-536, and he did not have to serve any additional time under CR-2004-536.  Mr. Torres, therefore, fails to show that he suffered any prejudice from Mr. Montrose's alleged unprofessional errors resulting in delays in sentencing in CR-2004-536, and the Court finds that this claim should be denied.

In addition, even if Mr. Torres was sentenced on the probation revocation under CR-2004-536 due to his new felony in CR-2007-341, he fails to support his claim that he did not receive good time credits from December 22, 2007 to September 11, 2008.  If Mr. Torres was imprisoned for revocation of his probation in CR-2004-536, he would have been entitled to four days per month of good time credit under the EMDA, which is the amount he states he is earning. *See* N.M. Stat. Ann. § 33-2-34 (A)(3) ("for a prisoner confined following revocation of parole [10]for the alleged commission of a new felony offense," meritorious deductions shall not exceed four days per month); ***Application (Doc. 1)*** at 11 ("[T]he Defendant [Mr. Torres] is serving an [sic] 85% of the 4 year sentence.").  Since Mr. Torres was earning good time credits at the rate at which he is entitled under the EMDA (four days per month), the Court finds that his claim that he did not receive good time credits as a result of his counsel's ineffectiveness, without providing any support for that claim, is without merit and should be denied.  *See Hall*, 935 F.2d at 1110 (conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim).

---

[10]Mr. Torres was serving his probation term concurrently with his parole term pursuant to his Amended Judgment and Order Partially Suspending Sentence in CR-2004-536.  *See **Answer*** , Exhibit N (*Doc. 13-3*) at 51.

### 4.  Mr. Torres' Motions for Additional Records

The Court next addresses Mr. Torres' **Motion for Respond[e]nts to Submit Additional State Court Records** *(Doc. 17)*, **Petitioner's Motion to Ask the Court for Other Recordings and Viod [sic] Transcript[]s** *(Doc. 19)*, and **Motion for Order of Transcripts** *(Doc. 20)*, where he asks the Court to: (1) order Respondents to forward certain court transcripts and records from his state criminal cases, CR-2004-536 and CR-2007-341; (2) review transcripts of hearings from his state criminal cases which Mr. Torres states provide evidence of the conflict of interest of his counsel and other errors in his state cases; and (3) to order the Department of Corrections to provide Mr. Torres with a way to review the recordings from his state cases.  *See Document 17* at 1-2, *Document 19* at 1-3, and *Document 20* at 1.

On April 9, 2009, the Court ordered Respondents to submit certain state court records and to serve Mr. Torres with copies of those materials.  **Order for Respondents to Submit Additional State Court Records** *(Doc. 15)* at 2.  Respondents filed the requested state court records on May 4, 2009, indicating that the records were provided to Mr. Torres as well.  *See* **Respondents' Notice re: Filing of State District Court Tapes, CD, Transcript and Logs** *(Doc. 18)* at 2 (stating that "Petitioner is subject to the terms and conditions of the New Mexico Corrections Department's management policies and procedures with regard to receipt of the cassette tapes and CDs, recorded in FTR format.").  Mr. Torres does not claim that he did not receive the materials ordered by the Court, but instead he asks the Court to order that additional state court materials be sent to him.  *See* **Motion for Respond[e]nts to Submit Additional State Court Records** *(Doc. 17)* at 1 (asking for records dated October 12, 2007 through November 30, 2007); **Petitioner's Motion to Ask the Court for Other Recordings and Viod [sic] Transcript[]s** *(Doc. 19)* at 1-3 (asking for recordings of

hearings from October 10, 2007 through November 30, 2007; asking for a recording of the August 17, 2007 change of plea hearing, and indicating that he had received the transcript of that hearing and that it was incomplete; and asking for a CD player so he can review the recordings); and *Motion for Order of Transcripts (Doc. 20)* at 1-2 (asking for transcripts of hearings from October 10, 2007 through November 30, 2007). Mr. Torres states that these additional records will provide support for his claim regarding Mr. Montrose's alleged conflict of interest and his ineffective assistance of counsel claims. *See Motion for Respond[e]nts to Submit Additional State Court Records (Doc. 17)* at 2; *Petitioner's Motion to Ask the Court for Other Recordings and Viod [sic] Transcript[]s (Doc. 19)* at 2; and *Motion for Order of Transcripts (Doc. 20)* at 2.

Before the Court will order transcripts or recordings, a habeas corpus petitioner must allege more than conclusory allegations and must demonstrate a particularized need for the transcripts or recordings. *See, e.g., Jackson v. Turner*, 442 F.2d 1303, 1305 (10th Cir. 1971) (stating that "the rule in this circuit with respect to federal habeas corpus proceedings is that petitioners who seek a transcript . . . must do more than allege conclusory allegations") (citations omitted); *see also Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (holding that, while "[o]n direct appeal, a trial transcript is an absolute matter of right for an indigent criminal defendant . . . a § 225[4] petitioner seeking collateral relief must demonstrate that his claim is not frivolous before the court is required to provide him with a free transcript;" therefore, the court was not required to provide a transcript to a petitioner in a § 2254 habeas case when the petitioner had made mere conclusory allegations because the court is not required to provide petitioners access to transcripts to search for facts to support their allegations). Mr. Torres' vague statements that the additional materials will provide support for his claims do not provide a particularized need for additional state court materials, and the Court will not order additional materials so Mr. Torres can search for facts to support his

allegations.  *See Ruark*, 958 F.2d at 319.  In addition, the Court finds no merit in Mr. Torres' request

that the Court order a non-party (the New Mexico Corrections Department) to provide him with a

CD player to listen to the recordings that were provided to him by Respondents.  ***See Petitioner's***

***Motion to Ask the Court for Other Recordings and Viod [sic] Transcript[]s (Doc. 19)*** at 2-3.

While Mr. Torres states that he needs to review the recordings so he "can raise claims[]or motions

for the review of the Court" (*id.* at 3), the Court has reviewed the relevant portions of the state

transcripts and recordings and has found no evidence to support Mr. Torres' claims.   In addition,

Mr. Torres fails to provide any support for his statement that he requested a CD player and that his

request was refused, nor does he state that he followed the proper procedures for such a request

under the prison's policies.  Finally, this issue appears to be moot because Mr. Torres fails to raise

it in his ***Motion for Order of Court Transcripts (Doc. 20)***, where he only asks for additional

transcripts from his state court cases.  For these reasons, the Court recommends that Mr. Torres'

***Motion for Respond[e]nts to Submit Additional State Court Records (Doc. 17)***, ***Petitioner's***

***Motion to Ask the Court for Other Recordings and Viod [sic] Transcript[]s (Doc. 19)***, and ***Motion***

***for Order of Court Transcripts (Doc. 20)*** be denied.

### C.  Conclusion

For the foregoing reasons, the Court finds that habeas relief is not warranted on Mr. Torres'

claims.  Mr. Torres has failed to establish that the adjudication of his claims on the merits in the state

court proceedings resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the United States Supreme Court,

or that the decision was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings.  *See* 28 U.S.C. §§ 2254(d)(1)-(2).  Therefore, the Court

recommends that this case be dismissed with prejudice and that Mr. Torres' ***Application for a Writ***

*of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Doc. 1)*, **Motion for Respond[e]nts to Submit Additional State Court Records (Doc. 17)**, **Petitioner's Motion to Ask the Court for Other Recordings and Viod [sic] Transcript[]s (Doc. 19)**, and **Motion for Order of Court Transcripts** (*Doc. 20*) be denied.

## RECOMMENDED DISPOSITION

The Court recommends that Mr. Torres' **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody** (*Doc. 1*), **Motion for Respond[e]nts to Submit Additional State Court Records** (*Doc. 17*), **Petitioner's Motion to Ask the Court for Other Recordings and Viod [sic] Transcript[]s** (*Doc. 19*), and **Motion for Order of Transcripts** (*Doc. 20*) be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

_____
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**